IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 8, 2020

**STATE OF TENNESSEE v. BUDDY WAYNE MOONEY**

**Appeal from the Circuit Court for Henderson County**
**No. 18211-2    Donald H. Allen, Judge**

_____

**No. W2019-01309-CCA-R3-CD**

_____

The Defendant, Buddy Wayne Mooney, was convicted by a Henderson County Circuit Court jury of possession with intent to sell 0.5 gram or more of methamphetamine, a Class B felony; possession with intent to deliver 0.5 gram or more of methamphetamine, a Class B felony; possession of drug paraphernalia, a Class A misdemeanor; and unlawful possession of a firearm with the intent to go armed during the commission of a dangerous felony, a Class D felony. *See* T.C.A. §§ 39-17-417(a) (2018) (subsequently amended) (possession of methamphetamine), 39-17-1324 (2018) (subsequently amended) (possession of a firearm), 39-17-425 (2018) (possession of drug paraphernalia). The trial court merged the two possession of methamphetamine convictions and imposed a ten-year probationary sentence, and it imposed sentences of eleven months and twenty-nine days in jail for the possession of drug paraphernalia conviction and three years in the Department of Correction for the weapon possession conviction. The court ordered the sentence for possession of methamphetamine to be served consecutively to the sentence for possession of drug paraphernalia. The court imposed the sentence for firearm possession consecutively to the sentence for methamphetamine possession but concurrently to the sentence for possession of drug paraphernalia. The effective sentence was thirteen years. On appeal, the Defendant contends that (1) the evidence is insufficient to support his felony convictions and (2) that the trial court erred in admitting evidence that the gun found inside the Defendant's car had been stolen. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Samuel W. Hinson, Lexington, Tennessee, for the Appellant, Buddy Wayne Mooney.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Jody Pickens, District Attorney General; Angela Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant's convictions relate to his having been found asleep or unconscious in his car on May 11, 2018. Methamphetamine, a glass pipe, digital scales, and a handgun were found in a consensual search of the car. A search of the Defendant revealed $847 in his wallet.

## Pretrial

The Defendant was charged with the offenses in the present case in one indictment, and he was charged with theft in a separate indictment after evidence emerged that the firearm found in his car on May 11, 2018, had been stolen on January 31, 2018. The Defendant moved to consolidate the cases, and the State did not oppose the motion. At a hearing on the motion held the day before the scheduled trial date for the May 11 offenses, the prosecutor advised the trial court that she had been unable to reach the victim of the theft charge and "the TBI person" by telephone. The prosecutor advised the court that a defense witness had been subpoenaed but had not been served with the subpoena. Defense counsel stated that this witness would testify that the witness had sold the gun to the Defendant. Defense counsel stated that he had filed the motion to consolidate "for efficiency purposes." He said, "We could move forward tomorrow on the trial we have for tomorrow without that witness, but for the docket number alleging the theft, I do need the witness for that purpose." Defense counsel stated that the witness had been cooperative, that the witness was local, and that counsel did not know "where he's gone to." The court stated that due to the problems the defense might have if the cases were consolidated, it would take the matter under advisement. The court stated that if the defense were able to have the witness present on the following day for the trial, it "might consider the possibility of consolidating these cases."

## Trial

The present case proceeded to trial the following day without consolidation with the theft case. At the trial, Henderson County Sheriff's Sergeant Mark Wood testified that he was on duty on May 11, 2018, and that he responded to a 6:35 a.m. call regarding an unresponsive man in a car in front of a community center. He said that when he arrived, emergency medical responders were already at the scene. Sergeant Wood said that he asked the Defendant "what was going on" and that the Defendant stated he had pulled over and had fallen asleep. Sergeant Wood said that after he checked the Defendant's identification, he asked the Defendant to get out of the car, and at that point,

Sergeant Wood saw a glass pipe in the driver's floorboard. Sergeant Wood said he was familiar with pipes of the type he saw in the Defendant's floorboard as being commonly used for methamphetamine consumption. Sergeant Wood said the Defendant stated the pipe was not his.

Sergeant Wood testified that the Defendant consented to a search of the car. Sergeant Wood said that he found a black bag on the passenger seat and that the bag contained a white crystalline substance inside a clear cellophane bag and digital scales. He suspected the substance was methamphetamine. In the passenger floorboard, Sergeant Wood found a black bag containing a nine-millimeter pistol. He said the gun had a round of ammunition in the chamber and five rounds in the magazine. He said the bag contained an additional magazine containing seven rounds. Sergeant Wood said that he asked the Defendant about the gun and that the Defendant stated he had purchased the gun recently and had not had time to register it. Sergeant Wood said he checked the gun's registration later and that "[i]t came back stolen." Sergeant Wood said that when he searched the Defendant incident to the arrest, he found $847 in the Defendant's wallet. Sergeant Wood stated that the Defendant advised him that the Defendant was unemployed and that the Defendant had borrowed the car.

Sergeant Wood testified that he noticed characteristics associated with methamphetamine use when he talked to the Defendant. Sergeant Wood said that the Defendant's pupils were dilated, that the Defendant was "fuzzy on his details," and that he asked the Defendant to get out of the car in order to assess whether the Defendant should drive. Sergeant Wood said the Defendant had difficulty standing. Sergeant Wood said, "It was a borderline case as far as looking at DUI on the situation."

Sergeant Wood agreed that if he arrested someone who possessed more than 0.5 gram of methamphetamine he would charge them "with possession with intent automatically" and said this was "[b]y the law." He agreed that a person might possess that much methamphetamine solely for personal use. He said that in charging the Defendant, he took into account the totality of the circumstances, which included the weight of the methamphetamine, the scales, the pipe, the $847, and the fact the Defendant stated he was unemployed.

Sergeant Wood agreed that the caller who reported having seen the Defendant unresponsive in the car had not said the Defendant had been selling drugs in the parking lot. Sergeant Wood said the authorities had not known initially if the call might be related to a medical issue. He agreed the methamphetamine he found in the Defendant's car had been the size of a grape or large marble and said it was referred to "on the street" as an "eight ball." He said he did not know if it was uncommon for a methamphetamine user to purchase an eight ball for personal consumption.

Sergeant Wood testified that drug buyers often used scales to verify the weight of their purchases and that they used them to weigh what they sold to others. He agreed that the scales in the Defendant's car might have been used to verify the weight of the Defendant's purchases.

Sergeant Wood agreed that he had written in his report that the pipe found in the Defendant's car appeared to contain methamphetamine residue and showed signs of heavy use. Sergeant Wood stated that he did not administer a drug test to the Defendant.

Tennessee Bureau of Investigation (TBI) Special Agent Forensic Scientist Rachel Strandquist testified that she analyzed a crystalline substance related to this case and prepared a report of her findings, which was received as an exhibit. She said her analysis showed that the substance was 3.43 grams of methamphetamine.

Lexington Police Narcotics Investigator Ricky Montgomery, an expert in narcotics trafficking, testified that he had participated in undercover narcotics purchases using confidential informants in Henderson County. He said he tried to conduct six to nine transactions per week. He said that the normal amount of methamphetamine purchased in one transaction was one gram and that the price was typically around $100 per gram, although it was lower than usual at the time of the trial at $60 per gram. He said he had purchased eight balls of methamphetamine but typically did not because the expense was too great, given his budget. He said that the current price for an eight ball was around $150 but that "[b]ack in the day," the price had been $250 to $300. He said that one gram was the typical quantity sold in Henderson County.

Investigator Montgomery testified that methamphetamine users ingested the drug by injecting it or smoking it in a glass pipe. In his opinion, a person who possessed digital scales sold drugs, and it would be "very uncommon" for a drug user to possess digital scales. He said that when he used confidential informants for drug purchases, he did not send them to make purchases with digital scales. He said "a large majority" of the people he encountered both used and sold methamphetamine. He said it would not be uncommon for a methamphetamine user to use one gram per day.

Investigator Montgomery testified that guns and weapons were used in drug trafficking for dealers to protect themselves from being robbed of their drugs and cash. He testified that in his experience, the amount of drugs involved in this case was possessed for sale, not personal use. He acknowledged that a methamphetamine user might purchase an eight ball for personal use. When asked if, in the course of his employment, he had heard about the Defendant's trying to sell drugs, he said, "I have heard [the Defendant's] name, but I've never dealt with him personally." He agreed he had never had a reason to believe the Defendant sold methamphetamine. He agreed that a drug dealer might possess a glass pipe in order to use methamphetamine or to allow a

purchaser to try the drugs. He said that drug dealers sometimes wanted a purchaser to use methamphetamine as part of the transaction in order to show that the purchaser was not a member of law enforcement.

The defense elected not to offer evidence. The jury found the Defendant guilty of the charged offenses. This appeal followed.

# I

## Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his felony convictions because the State failed to prove the intent element of the offenses. The State responds that the evidence is sufficient. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

 "A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

## A. Possession of Methamphetamine

"It is an offense for a defendant to knowingly: . . . Deliver a controlled substance[;] . . . Sell a controlled substance; or . . . Possess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(2)-(4) (2018). Methamphetamine is classified as a Schedule II controlled substance. *Id.* § 39-17-408(d)(2) (2018). As relevant here, a person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." *Id.* § 39-11-302 (2018). "It may

be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." *Id.* § 39-17-419 (2018).

Viewed in the light most favorable to the State, the evidence shows that the Defendant possessed 3.43 grams of methamphetamine, digital scales, a glass pipe, a loaded weapon, and $847. The Defendant told Sergeant Wood that he was unemployed and that the glass pipe was not his. Investigator Montgomery testified that one gram was the typical amount purchased in a single transaction by methamphetamine users in Henderson County. He said that drug users often also sold drugs. He testified, as well, that sellers typically possessed digital scales but that buyers typically did not. He said a seller might possess a pipe and require a purchaser to use methamphetamine during a transaction in order to prove the purchaser was not a member of law enforcement. He said drug dealers often possessed firearms in order to protect themselves from theft of drugs and money.

This court has said that items such as scales and weapons near drugs or a defendant are appropriately considered in determining whether a defendant had the requisite intent to possess drugs for sale or delivery. *See, e.g.*, *State v. Phillip Francis Morales*, No. E2001-01768-CCA-R3-CD, 2003 WL 21297308, at *8 (Tenn. Crim. App. June 5, 2003). The Defendant's possession of large amounts of methamphetamine and cash, coupled with his statement that he was unemployed, provide additional support for a conclusion that he knowingly possessed the methamphetamine for sale or delivery. *See* T.C.A. § 39-17-419. We conclude that the evidence is sufficient to support the Defendant's convictions for possession with intent to sell and possession with intent to deliver methamphetamine.

## B.    Possession of a Firearm

The Defendant contends that the evidence is insufficient to support his conviction for possession of a firearm with the intent to go armed during the commission of a dangerous felony because (1) the proof was insufficient of his guilt of a dangerous felony and (2) "the gun was in a closed bag on the passenger side floorboard completely out of [the Defendant's] reach." The State counters that the Defendant has mischaracterized the evidence because Sergeant Wood did not testify that the gun was out of the Defendant's reach.

"It is an offense to possess a firearm or antique firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." *Id*. § 39-17-1324(a). A felony offense involving possession with the intent to sell or to distribute a controlled substance is a dangerous felony. *Id.* at (i)(1)(L).

As we have stated, the evidence is sufficient to support the Defendant's possession with intent to sell or deliver convictions. The evidence shows, as well, a loaded handgun was in a bag in the passenger floorboard of the car in which the Defendant was found with the drugs, scales, money, and glass pipe. Because the Defendant did not have the firearm on his person, we will consider whether the evidence is sufficient to establish that he was in constructive possession of it. "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). A person has constructive possession of a firearm who "has the power and ability to exercise control over the firearm." *Key v. State*, 563 S.W.2d 184, 188 (Tenn. 1978).

Viewed in the light most favorable to the State, the evidence showed that the Defendant was seated in the driver's seat of a car with a bag containing the firearm in the passenger's floorboard. Contrary to the Defendant's characterization of the evidence, Sergeant Wood did not testify that the gun "was completely out of [the Defendant's] reach." Rather, the evidence shows that the gun was located in a place where the Defendant, whose car was parked, had power over and the ability to exercise control of the gun. We conclude that the evidence is sufficient to support the Defendant's conviction for possession of a firearm during the commission of a dangerous felony.

Because the evidence is sufficient to support the Defendant's convictions, he is not entitled to relief on this basis.

## II

### Admission of Evidence

The Defendant contends that the trial court erred in admitting Sergeant Wood's testimony that the gun found in the Defendant's car had been stolen. The Defendant argues that the evidence was irrelevant and prejudicial and that his right to due process was violated by its admission. The State counters that the court did not abuse its discretion in determining that the evidence was relevant and admissible but that even if the Defendant is correct, the error was harmless. We conclude that the Defendant is not entitled to relief.

Evidence is relevant and generally admissible when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401, 402. Questions regarding the admissibility and relevance of evidence generally lie within

the discretion of the trial court, and the appellate courts will not "interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)). Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

A trial court abuses its discretion when it applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006).

The record reflects that the Defendant objected to Sergeant Wood's testimony that the gun had been reported as stolen and that the trial court found, "I think it's relevant whether or not the defendant admitted that he was in possession of the gun or not. If it comes back that it was stolen then I think that can be relevant as well."

Although the Defendant's possession of a gun was relevant to the charged offenses of possession of methamphetamine with the intent to sell and deliver and possession of a firearm during the commission of a dangerous felony, whether the gun was stolen had no bearing on the question of the Defendant's guilt or innocence of these charges. *See* Tenn. R. Evid. 401, 402. Because the evidence was not relevant, the court erred in admitting it. The Defendant bases a portion of his argument on Tennessee Rule of Evidence 403, which excludes evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Because we have concluded that the evidence that the gun was stolen had no probative value, it is unnecessary to engage in the balancing test of Rule 403.

The question which remains is whether the Defendant is entitled to a new trial. In that regard, he argues that the evidence was highly prejudicial and that he was denied due process because, had he known the trial court would admit the evidence, he could have filed a motion to continue in order to have the opportunity to present a defense witness who would testify that the Defendant had purchased the handgun and that it was not stolen. This witness was the individual he referenced at the pretrial hearing regarding consolidation of this case with the Defendant's theft case related to the firearm.

Sergeant Wood testified that the Defendant told him at the scene that he had purchased the gun recently but had not had time to register it. Thus, there was countervailing proof regarding the status of the gun. In any event, the danger of the jury placing undue weight on the evidence that the gun was stolen was insignificant in view of the overwhelming evidence of the Defendant's guilt. With regard to the Defendant's due process argument related to his inability to call a defense witness to rebut the evidence that the gun had been stolen, we note that the defense did not ask for a recess or a

continuance during the trial in order to compel the appearance of the witness with alleged knowledge that the gun was not stolen. The defense was aware of the allegation that the gun had been stolen because the Defendant had been charged with theft of the gun and faced trial on that charge. Indeed, the theft case was the one that the defense initially moved to have consolidated with the present case, and the defense was aware of a witness who it anticipated would rebut the theft allegation. We conclude that the Defendant has not shown that his due process rights were violated by the admission of this evidence. Any error in the admission of the evidence was harmless.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE